NATIONAL BANK OF AUSTIN, Trustee, *et al.*, Plaintiffs-Counterdefendants-Third-Party Defendants-Appellants, *v.* FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Defendant-Counterplaintiff-Third-Party Plaintiff-Appellee.

Second District    No. 75-404

Opinion filed September 28, 1977.

Joseph B. Cleary, of Deerfield, for appellants.

Stephen C. Sandels, John T. Schriver, and Kimberly Laidlaw, all of McDermott, Will & Emery, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs, counterdefendants, are the trustee of a land trust holding legal title to the property in question (National Bank of Austin, as trustee under Trust No. 5010, hereinafter Austin Trust); the Builders and Developers of Eastwood Manor Unit No. 4 (BKT Enterprises, a

partnership composed of Fred Brodie and James A. Taggart, hereinafter the Partnership); the partners individually as sole beneficiaries of the Austin Trust; and Sally Taggart, the wife of James Taggart. They appeal from a judgment which denied declaratory and injunctive relief relating to construction mortgages in the amount of $550,000 and $3,000,000, respectively. They also appeal from a judgment of foreclosure together with the order approving the report of sale and distribution which was entered on the counterclaim and third-party complaint filed by the defendant, counterplaintiff mortgagee (The First Wisconsin National Bank of Milwaukee, hereinafter First Wisconsin).

On June 15, 1972, the Austin Trust executed the two mortgages together with the notes secured by the mortgages. On the same date the Partnership executed two construction loan agreements. Fred Brodie, James A. Taggart and Sally Taggart also executed personal guarantees of the mortgages and notes. On August 14, 1973, the Austin Trust filed a declaratory judgment action against First Wisconsin. First Wisconsin answered and counterclaimed for foreclosure of the mortgages using the short form complaint (Ill. Rev. Stat. 1975, ch. 95, par. 23.6) and naming James Taggart, Sally Taggart, Fred Brodie, and the Partnership as having personal liability for a deficiency decree (Ill. Rev. Stat. 1975, ch. 95, par. 23.6(m)). In separate counts, First Wisconsin also sought judgment against the three individuals pursuant to their status as guarantors, and it sought judgment against James Taggart, Fred Brodie and the Partnership pursuant to their liability for the Partnership debt. First Wisconsin moved for summary judgment which was denied.

Thereafter the case was set for trial and the trial date continued from time to time pending various settlement negotiations. After failure of settlement negotiations, the attorneys for the plaintiffs, counterdefendants, filed a motion to withdraw which was allowed on February 7, 1975, at a hearing also attended by Fred Brodie and James A. Taggart. At the hearing the court advised plaintiffs, counterdefendants, that they must obtain substitute counsel or otherwise cause a supplemental appearance to be filed under a local court rule (Rule 14). In substance the rule gave a seven-day period to comply. At this time the plaintiffs, counterdefendants, advised the court that they would have counsel in two or three weeks. The court allowed them 21 days.

On March 14, 1975, First Wisconsin moved for a default on the basis that no appearances had been filed. Brodie and James Taggart were present in court at the hearing on the default motion. Brodie represented that they had been trying to get an attorney but did not have enough money and stated that they would have an attorney within five days. The court granted the motion for the entry of an order of default stating to Brodie and Taggart that if they or their counsel made an appropriate

motion within 30 days, the default would be vacated but that if no steps were taken to secure counsel or to vacate the default within 30 days the court would hear the proveup of damages on April 15, 1975.

On the April 15 hearing to prove up damages James Taggart and Fred Brodie were present in court. Brodie represented that they would have funds available in 2 weeks to pay their previous attorney whom they claimed was holding their files. Taggart stated that they in fact had hired an attorney who would proceed as soon as they could get the file. The mortgagees' attorney and the attorney for various claimants who were in court objected to any further continuance. Counsel argued that the court should not permit the partners to appear as their own attorneys either for the Austin Trust or for the Partnership. The court refused to continue the matter and proceeded with the hearing. This colloquy followed:

"Mr. Taggart: Could I ask a question? May I ask the court, Your Honor, are we going to be allowed to answer this as individuals?

The Court: I do not know what you mean, 'Answer.'

Mr. Taggart: Well, I mean to disclaim some of the things that he's saying. Are we going to be allowed to do that or do I have to have counsel to do that?

The Court: You have to have counsel.

Mr. Taggart: I have to have counsel. In other words, anything that is said today, I can't answer or come up and talk to you about it or prove differently? I'm not able to do that. I have to have counsel to do that?

The Court: Under the posture of the case, that is correct, you must have counsel.
＊　＊　＊

The Court: ＊　＊　＊ Let the record show that Mr. Taggart and Mr. Brodie left the Courtroom."

After hearing evidence as to damages, the trial court found in favor of First Wisconsin on its answer, counterclaim for foreclosure, and its third party claim. The trial court stated these findings in a judgment order dated April 15, 1975, and in addition entered a "Decree of Foreclosure and Sale" which found the Austin Trust had defaulted on the mortgages with resulting damage in the amount of $1,274,047.10. The decree ordered foreclosure of the mortgage and sale of the property and retained jurisdiction over all parties "for the purposes of ＊　＊　＊ determining the character and amounts of the deficiency decrees to be entered in this cause as a result of the sale."

Thereafter Taggart and Brodie individually and "d/b/a BKT Enterprises" and Sally Taggart petitioned the court to vacate the default order alleging that the decree had materially affected their rights and that they were not allowed to defend. On May 16 the court denied the petition

finding the petitioners had ample opportunity to secure counsel or file a supplemental appearance; there had been no showing of due diligence or to make meritorious defense, and the petition was insufficient as a matter of law under section 72 of the Civil Practice Act.

On the same day, May 16, a notice of appeal was filed by Brodie, the Taggarts and the Partnership. On the motion of First Wisconsin the appeal was dismissed in this court on June 17, 1975. First Wisconsin supported its motion with the argument that the appeal was not taken from a final order.

On July 15, 1975, the foreclosure sale took place. On July 17, 1975, the court entered its judicial report of sale and its order approving the report of sale and distribution. Among other things that document orders that First Wisconsin shall "have and recover a deficiency judgment against the Defendants James A. Taggart, Sally Taggart, Fred Brodie and BKT Enterprises, a partnership, in the sum of $607,184.66 and that execution issue therefore."

The present appeal commenced when the Austin Trust together with the Taggarts, Brodie, and the Partnership filed a notice of appeal on August 14, 1975, from the April 15, 1975, foreclosure decree, and the order approving the judicial report of sale and distribution entered July 17, 1975. Again First Wisconsin moved to dismiss the appeal, this time arguing that the appeal properly lay from the decree of foreclosure dated April 15 thus making the appeal from the order approving the judicial report of sale and distribution untimely. In its motion, First Wisconsin also argued that since no steps had been taken to clear the default judgment, the appeal should be dismissed on this ground as well. We denied the motion.

Defendant again argues in its brief that the foreclosure decree of April 15, 1975, was the final and appealable order with respect to the mortgage foreclosure, contending that the foreclosure decree was, in fact, final and appealable as to the Austin Trust which did not join in the earlier notice of appeal. Nevertheless the circumstances clearly place First Wisconsin in what we consider to be not only an inconsistent but an unconscionable position under the circumstances. Having secured a dismissal of the earlier appeal from the foreclosure decree, we cannot permit them to now argue that the foreclosure decree was, in fact, then appealable and that the Austin Trust is now barred because it is too late for them to appeal from that decree. Assuming without deciding that our previous order dismissing the appeal from the decree of foreclosure was erroneous, it would be an error requested and invited by the defendants. They are therefore estopped from now asserting that error even as to the Austin Trust. See *Western Springs Park District v. Lawrence*, 343 Ill. 302, 311 (1931); *Martin v. McIntosh*, 37 Ill. App. 3d 526, 531 (1976).

■■ First Wisconsin argues that the position which it previously took, and with which we agreed in our dismissal of the former appeal, is not inconsistent with its present position that the Austin Trust is barred from appealing from the decree of foreclosure. We are not persuaded. They argue that while the former appeal was from an order which was not final as to Brodie, the Taggarts and the Partnership, it was final as to the Austin Trust. This argument is apparently based on the theory that the land trust beneficiaries were not necessary nor even proper parties in the proceedings resulting in the decree of foreclosure. While we agree that the beneficiaries were not necessary parties to the foreclosure proceeding against the land trust holding title to the mortgaged real estate, the land trust beneficiaries may, as persons who claim an interest in the controversy, be joined as proper parties. (See *Chicago Title & Trust Co. v. Exchange National Bank*, 19 Ill. App. 3d 565, 569 (1974). See also Ill. Rev. Stat. 1975, ch. 95, par. 23.3; Ill. Rev. Stat. 1975, ch. 110, par. 24(1).) As one writer has observed:

> "[T]he rights of the beneficiary to possession, rents and avails are of such consequence that most practitioners prefer to make them parties defendant as unknown owners or to determine their identities and implead them as parties defendant." (Kenoe, Land Trust Practice §6.22, at 6—30 (1974).)

See also *Department of Conservation v. Franzen*, 43 Ill. App. 3d 374, 380 (1976).

Here James A. Taggart and Fred Brodie were, in fact, impleaded by First Wisconsin. While First Wisconsin argues that the foreclosure decree granted no relief against the beneficiaries and that the court merely retained jurisdiction in the decree to grant a deficiency judgment against them in the event that the property subject to the foreclosure was sold and that the sale resulted in a deficiency, the fact remains that they are permissive parties with a right to participate in the foreclosure action.[1]

■■ In addition, James Taggart, Sally Taggart and Fred Brodie were joined in separate counts of the complaint in their capacities as guarantors of the mortgage note. As guarantors they obviously were interested in the controversy relating to the alleged defaults because the guarantor of the note becomes a debtor when there is a default of the note. *Mid-City National Bank v. Mar Building Corp.*, 33 Ill. App. 3d 1083, 1088 (1975).

■■ In the separate counts of its complaint First Wisconsin also sought to establish liability against the Partnership based on the construction loan agreements. It joined the partners Taggart and Brodie as individuals in an

---

[1] While we recognize that section 1 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 1) states that the Act applies only to matters of procedure not regulated by the Illinois Mortgage and Foreclosure Act (Ill. Rev. Stat. 1975, ch. 95, par. 1 *et seq.*), we find nothing in the Mortgage Foreclosure Act which would prevent such permissive joinder.

attempt to establish their personal liability on the partnership debt. (See, *e.g., Bayles v. Bennett*, 22 Ill. App. 3d 144, 146 (1974); Ill. Rev. Stat. 1975, ch. 106½, par. 15.) The partnership debt was specified in the construction loan agreements and incorporated by reference in the mortgage notes. As a result, it is clear that the partners were at least proper parties by permissive joinder to the foreclosure action. Ill. Rev. Stat. 1975, ch. 110, pars. 24(1) and 27.1.

We therefore conclude that James Taggart, Sally Taggart, Fred Brodie, and the Partnership were properly joined as permissive parties to the countercomplaint seeking to foreclose the mortgage and were therefore entitled to participate in the foreclosure proceedings and to prosecute a timely appeal. See *Verson v. Hart*, 107 Ill. App. 2d 480, 485-86 (1969).

We then must consider whether the appellants were in fact deprived of a right to litigate the issues of the default judgment, the proveup resulting in the foreclosure decree and the further proceedings resulting in the deficiency judgment entered against Brodie and the Taggarts. The answer to this, in turn, hinges on the right of the individuals Brodie and Taggart to represent the corporate trustee, the Partnership and the natural parties.

Section 11 of the statute regulating the practice of attorneys and counselors (Ill. Rev. Stat. 1975, ch. 13, par. 11) states:

> "Plaintiffs shall have the liberty of prosecuting, and defendants of defending in their proper persons * * *."

The Austin Trust as the corporate trustee holding title under a land trust, the land subject to the foreclosure, and as the signer of the mortgage instruments, was not deprived of an opportunity to defend. Its counsel voluntarily withdrew prior to the entry of the order of default. It is further clear that a corporation cannot be represented in the practice of law by an individual who is not an attorney. (*Tom Edwards Chevrolet, Inc. v. Air-Cel, Inc.*, 13 Ill. App. 3d 378, 379-80 (1973). See also 19 A.L.R.3d 1073.) The appellants, in fact, admit that Brodie and Taggart were not seeking to represent the Austin Trust in its corporate capacity and this is confirmed by the record. Instead they argue without citation of authority that because of their substantial interest in the litigation a reversal as to Brodie and Taggart, either as partners or individuals, would warrant reversal as to the Austin Trust to assure the equitable disposition of the cause. We will address this argument later in the opinion.

■■ We first do not agree that Brodie and Taggart as the individuals comprising the BKT Partnership could represent the partnership entity in these legal proceedings. The fact that every partner is an agent of the partnership for the purpose of its business (Ill. Rev. Stat. 1975, ch. 106½, par. 9(1)) does not require the conclusion that the individual partners can represent the partnership. We have previously indicated Illinois law requires that all who represent others in courts of law be attorneys at law.

(*City of Chicago v. Witvoet*, 12 Ill. App. 3d 654, 656 (1973).) A layman may only appear in his own behalf. (*Lake Shore Management Co. v. Blum*, 92 Ill. App. 2d 47, 51 (1968).) Thus an agent who is a layman is not permitted to prosecute a legal action on behalf of his principal. (*Leonard v. Walsh*, 73 Ill. App. 2d 45, 47 (1966).) It would follow that a partner who is a layman should not be permitted to act as agent for the partnership and represent the partnership in legal proceedings.

In this same regard Sally Taggart at no time sought to represent herself. The above principles require us to conclude that she could not be represented by her husband, James Taggart, or any other person not an attorney.

However, there is no real dispute as to the right of Fred Brodie and James A. Taggart, who have a substantial interest in the litigation, to represent themselves. (*People v. Tinkoff*, 399 Ill. 282, 288-89 (1948).) Proceeding *pro se*, however, they must comply with the same rules required of attorneys. *Bohannon v. Schertz*, 21 Ill. App. 3d 149, 150-51 (1974). *Cf. Biggs v. Spader*, 411 Ill. 42, 46 (1952).

Defendants contend that although repeatedly admonished by the court Brodie and the Taggarts did not follow the local rule which provided:

"*Rule 14. Appearance and Withdrawal of Attorney*

(a) ADDRESSING THE COURT

An attorney shall file his appearance before he addresses the Court unless he is presenting a motion for leave to appear by intervention or otherwise.

\* \* \*

(d) SUPPLEMENTAL APPEARANCE

Unless another attorney is, at the time of such withdrawal, substituted for the one withdrawing, the party shall file in the case within 7 days a supplemental appearance, stating therein an address at which the service of notice or other papers may be had upon him. In case of his failure to file such supplementary appearance, notice, if by mail, may be directed to him at his last known business or residence address."

It is conceded that none of the individuals entered an appearance. We conclude, however, that the court rule does not expressly or by implication require the conclusion that a *pro se* litigant must file an appearance before addressing the court. The critical inquiry in our view is whether Taggart and Brodie, in fact, were permitted to address the court, and were improperly denied the right to a further continuance which they requested.

A trial judge should resort to a default judgment as a method of resolving the rights of litigants only as a last resort to keep the court docket current. (*Mieszkowski v. Norville*, 61 Ill. App. 2d 289, 297-98

(1965).) However, Brodie and Taggart's pattern of delay, their unwillingness to proceed to trial and their light regard for court procedure would justify both the trial court's denial of their request for a continuance and the entry of a default. See *Hub Airlines, Inc. v. Bouska*, 29 Ill. App. 3d 565, 567 (1975); *Bender v. Schallerer*, 9 Ill. App. 3d 951, 954 (1973); *Jones v. Sullivan*, 34 Ill. App. 3d 786, 790 (1976).

Indeed, the trial judge at the time he entered the default judgment recognized the right of James Taggart and Fred Brodie to represent themselves:

> "The Court: You tell me you will have counsel within five days and I will tell you that if *you or your counsel* makes the appropriate motion within 30 days from today the default will be vacated." (Emphasis added.)

Brodie and Taggart clearly had an opportunity to represent themselves and further if it was actually their desire to proceed to trial *pro se* it was their obligation as their own counsel to state to the court that they were prepared to proceed. In fact, at least Brodie appeared to raise no question as to the judge's ruling since he stated that he understood the judge's explanation of why the default was being entered and stated, "We will have our attorney here within a week."

■■ It was only on the April 15 hearing to prove up damages that any of the individual appellants actually asked to represent themselves. We conclude that the court erroneously denied Taggart the right to represent himself in contesting damages. Taggart had the right to challenge the unliquidated claim for damages which stemmed from the default judgment. (*Elfman v. Evanston Bus Co.*, 37 Ill. 2d 609, 614-15 (1963).) As stated in *Straus v. Biesen*, 242 Ill. App. 370, 374 (1926):

> "The defendants were not in complete default. Their default admitted the cause of action, but not the amount of damages. Consequently, under the rule, they were entitled to notice of the assessment of damages so that they might participate in the proceedings."

Thus, the personal deficiency judgment should be vacated as to James Taggart and he should be restored to his right to contest that issue.

Although Brodie did not expressly ask to represent himself as did Taggart, in view of the fact the trial judge apparently addressed both of them in his observation that they could not appear without counsel, we conclude that the same result should follow as to Fred Brodie.

While it is clear that this case must be remanded to the trial court so as to vindicate the rights of James Taggart and Fred Brodie, there remains the question of what issues they may raise on remand, and also whether the judgment should be reversed as to the other appellants.

■■ As to the first inquiry, we note that we need not permit appellants

to raise issues on remand which they could have raised in the original trial. As a result, we conclude there is no need to vacate the decree of foreclosure, even as it may have affected the interests of James Taggart and Fred Brodie. The record shows that the trial judge would have permitted them to contest the issue of mortgage default, if they desired to do so. The two partners had the opportunity, but did not contest the matter. Estoppel principles suggest that the trial on remand should be confined to those issues which James Taggart and Fred Brodie had no fair opportunity to contest.

We conclude that to do justice under the circumstances we need only remand that portion of the judgment which found James Taggart and Fred Brodie liable for the deficiency of the mortgage debt which would exist after the foreclosure sale. Remand on this issue alone will serve to vindicate the right of James Taggart and Fred Brodie to represent themselves. That right was only asserted on the issue of damages and, of course, their liability for a deficiency would be directly related to the proof on that issue.

■■ We deem it significant in this respect that the judgment as to the mortgagor, the Austin Trust, was completely independent of the judgment as it relates to the third parties to the mortgage debt. As corporate trustee the Austin Trust was subject only to the foreclosure of the mortgaged real estate and had no liability for repayment of the mortgage debt. As far as the trust was concerned, the land trust property was the sole security for the mortgage debt. (*Barkhausen v. Continental Illinois National Bank*, 3 Ill. 2d 254, 265 (1954).) In contrast to the liability of the mortgagor, the individuals and the partnership entity only had liability for a money judgment as third parties to the mortgage debt. Their liability was completely independent and could have been litigated in a separate proceeding. *Mortgage Syndicate, Inc. v. Do & Go Equipment, Inc.*, 7 Ill. App. 3d 106, 109 (1972). *Cf. Oswianza v. Wengler & Mandell, Inc.*, 358 Ill. 302, 306 (1934); *Sturgis National Bank v. Harris Trust & Savings Bank*, 351 Ill. 465, 479 (1933).[2]

As to the second inquiry, we observe that although the deficiency judgment is vacated as to James Taggart and Fred Brodie, it need not necessarily also be vacated as to the Partnership and Sally Taggart. (Ill. Rev. Stat. 1975, ch. 110, par. 50(6).) In *Chmielewski v. Marich*, 2 Ill. 2d 568, 576 (1954), the court stated that a judgment vacated as to fewer than all parties, "should not be vacated as to any of the others unless it appears

---

[2] While recognizing those cases which suggest that a mortgagor may not in a foreclosure count join third parties legally responsible for payment of the mortgage debt (*e.g., Emerson v. La Salle National Bank*, 40 Ill. App. 3d 794, 799 (1976); *City of Chicago v. Chatham Bank of Chicago*, 54 Ill. App. 2d 405, 411-14 (1964)), we observe that the mortgagee alleged personal liability in separate counts apart from the foreclosure complaint. Ill. Rev. Stat. 1975, ch. 95, par. 23.6—1.

that because of an interdependence of the rights of the defendants or because of other special factors it would be prejudicial and inequitable to leave the judgment standing against them."

■■ We conclude, however, that to reach an equitable result the deficiency judgment in this case should be vacated as to all appellants. There exists an interdependence of rights between the partners and the partnership entity because if the judgment is sustained as to the Partnership, the partners, Brodie and Taggart, would nonetheless be liable for the judgment debt. (Ill. Rev. Stat. 1975, ch. 106½, par. 15; *Bayles v. Bennett*, 22 Ill. App. 3d 144, 146 (1974).) An interdependence of rights also exists as to Sally Taggart because of the nature of her obligation as co-guarantor of the mortgage note. If the deficiency judgment as to her is sustained, she would be liable for the entire judgment debt. (Ill. Rev. Stat. 1975, ch. 76, par. 3; *Estate of Isaacson v. Hertz*, 80 Ill. App. 2d 109, 110-11 (1967).) If she were to satisfy the judgment, she would be entitled to require James Taggart and Fred Brodie to bear a ratable proportion of the amount for which they were co-guarantors under the contract of guarantee. One who has paid more than his share is entitled to demand contribution from the others. See, 38 Am. Jur. 2d *Guarantee* §128 (1968). See also *McDavid v. McLean*, 202 Ill. 354, 359 (1903); *Golsen v. Grand*, 75 Ill. 148 (1874).

For the reasons stated above, we affirm the judgment of the trial court dismissing appellants' complaint and also affirm the judgment for foreclosure of the mortgage. We vacate the deficiency judgment and remand the cause for further proceedings consistent with this opinion.

Affirmed in part, vacated and remanded in part.

GUILD and WOODWARD, JJ., concur.