CATHY M. PADDOCK, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0618

Opinion filed June 21, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellant.

No brief filed for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Cathy M. Paddock, filed a *pro se* complaint for review of the final administrative decision of defendant, the Illinois Department of Employment Security, denying her claim for unemployment compensation benefits. The circuit court of Cook County reversed defendant's decision. Defendant appeals.

Plaintiff voluntarily quit her employment as an engraver for Durable Engravers (Durable) on January 29, 1987. She claimed that the prolonged sitting and lifting, which she did in her position as an engraver, caused her chronic back pain. Plaintiff applied for unemployment compensation benefits for the period from February 8 to February 27, 1987, under the Unemployment Insurance Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 300 *et seq.*). Thereafter, Durable notified defendant of plaintiff's possible ineligibility for benefits. Durable claimed that plaintiff might be restricting the duties she could perform for a new employer since she claimed that she had had surgery on, and a metal rod implanted in, her back. Therefore, Durable questioned whether plaintiff was actively seeking, available for and able to perform full-time work, as required by section 500C of the Act to be eligible for benefits thereunder. Ill. Rev. Stat. 1987, ch. 48, par. 420C.

Defendant's claimant questionnaire and claim certification forms, which plaintiff filled out on February 23, 1987, required plaintiff to list

"contacts and other efforts" she had made to obtain employment in the preceding two weeks. Plaintiff listed nine such contacts or efforts: (1) checked the Chicago daily newspapers for openings; (2) updated resume and portfolio and obtained references; (3) Banner Rubber Stamp, a former employer, sent resumes to customers; (4) phone call to Vail Printing; (5) phone call to ABC Business Forms; (6) phone call to "Auto Mart, Hoffman Pub"; (7) sent resume in response to a blind ad in the Chicago Tribune; (8) sent resume in response to an ad by Venus Records; and (9) sent resume to Oakton Community College.

The claims adjudicator determined that plaintiff was eligible for unemployment benefits because she had voluntarily left her employment after being found physically unable to perform her work by a physician, as provided under section 601B of the Act. (Ill. Rev. Stat. 1987, ch. 48, par. 431.) After Durable objected, the claims adjudicator reviewed his determination and again found plaintiff eligible for benefits. Durable appealed the determination to a referee. Plaintiff did not attend the referee's hearing because she had moved to California. After the hearing, the referee affirmed the claims adjudicator's determination that plaintiff had voluntarily left work after being found physically unable to perform. The referee, however, found plaintiff ineligible for benefits under section 500C and modified the claims adjudicator's determination accordingly. Specifically, the referee concluded that plaintiff's search for work was not realistic in that it was restricted by plaintiff's "inability to stretch or reach out from a sitting position."

Pursuant to plaintiff's request, the referee granted a rehearing at which plaintiff testified by telephone from California. At the hearing, the referee reviewed the contacts or efforts to find other employment which plaintiff had listed in the claimant questionnaire and claim certification forms and asked if that was the extent of her work search for the relevant two-week period. Plaintiff responded "Okay." With regard to the referee's conclusion that plaintiff had unrealistically limited her work search, plaintiff testified that she was looking for work as an artist and that she had worked as such for six to seven years before working as an engraver. She further stated that she thought herself physically able to work as an artist since her back condition existed during those years. She also stated that she did not think herself physically able to work as an engraver again but that she didn't think that was limiting her job search.

Finally, the referee asked plaintiff if she found time to look for work in person because she had not done so during the two-week period covered by the claimant questionnaire. Plaintiff responded that in those two weeks she was putting her portfolio and her resume to-

gether, that she was uncertain where to look for employment and that she was "basically regrouping."

The referee subsequently concluded, again, that plaintiff's work search was unrealistic since it was restricted by her inability to stretch or reach out from a sitting position. The referee also concluded that plaintiff made no contacts in person with prospective employers during the review period. The referee denied plaintiff benefits under section 500C. The board of review affirmed the referee's decision.

At the hearing on plaintiff's complaint in the circuit court, Mark Miller, a nonattorney, appeared on behalf of plaintiff, who was in California. Defendant was represented by an assistant Attorney General. Defendant objected to Miller's appearance on plaintiff's behalf inasmuch as Illinois law prohibits a nonlawyer from representing anyone other than himself. (Ill. Rev. Stat. 1987, ch. 13, pars. 1, 11.) Defendant also requested a continuance to allow plaintiff to obtain representation by an attorney.

The trial court denied the request and allowed Miller to represent plaintiff. In doing so, the trial court relied upon the fact, although not *in haec verba*, that the Act allows a union or any duly authorized agent to represent any individual or entity in proceedings under the Act. (Ill. Rev. Stat. 1987, ch. 48, par. 474b.) It also relied upon the fact that the office of the clerk of the circuit court of Cook County had informed plaintiff by letter that if she could not obtain an attorney to represent her, a relative or friend could do so. Finally, the trial court stated that it knew "how hard it is for a person in the city to find legal help."

Thereafter, defendant requested that the case be remanded for a new hearing before a different referee for a determination of whether plaintiff was actively seeking employment during the relevant two-week period. Defendant argued that the first referee had not adequately questioned plaintiff regarding the methods she had used to look for work, the type of work she had looked for and the six contacts she had made during the two weeks for which she sought benefits. The trial court, finding the evidence adequate to decide the case, denied defendant's request. The court ultimately reversed the decision of the board of review.

■ On appeal, defendant contends the trial court erred in allowing a nonattorney to represent plaintiff at the hearing on her complaint. Plaintiff has not filed an appellate brief. However, as the record and issues are uncomplicated, we will address the merits of the appeal. *First Capital Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

■ Illinois law requires that all who represent others in courts of

law be attorneys at law (*National Bank v. First Wisconsin National Bank* (1977), 53 Ill. App. 3d 482, 488, 368 N.E.2d 119; *City of Chicago v. Witvoet* (1973), 12 Ill. App. 3d 654, 656, 299 N.E.2d 128), *i.e.*, that they be admitted to the practice of law (*Janiczek v. Dover Management Co.* (1985), 134 Ill. App. 3d 543, 481 N.E.2d 25). A layman may only appear in his own behalf. (*National Bank v. First Wisconsin National Bank* (1977), 53 Ill. App. 3d 482, 488, 368 N.E.2d 119; Ill. Rev. Stat. 1987, ch. 13, par. 11.) Moreover, a party who chooses to proceed *pro se* must comply with the same rules of proceedings as an attorney. *Bohannon v. Schwartz* (1974), 21 Ill. App. 3d 149, 315 N.E.2d 316.

■■■ Having chosen to prosecute her complaint for administrative review *pro se*, plaintiff was obligated to follow one of three courses of action. She could have: (1) appeared on her own behalf on the date of the hearing on her complaint; (2) requested a continuance to another date when she could appear; or (3) retained an attorney at law to appear on her behalf instead. Plaintiff did not follow any of these courses of action. As such, the trial court erred in allowing Miller to represent her at the administrative review hearing and in proceeding to dispose of plaintiff's claim on the merits.

The fact that Miller did not make any arguments whatsoever, either legal or factual, does not compel a contrary conclusion. Had he not appeared for plaintiff, defendant would have been entirely within its rights to seek a default judgment against her or a dismissal for want of prosecution. By allowing Miller to appear for plaintiff, however, the trial court facilitated its ultimate disposition on the merits of her complaint in plaintiff's favor.

Nor was the trial court correct in relying upon the fact that the Act allows duly authorized agents to represent parties in proceedings before the director, his representative, a referee or the board of review. That fact is of no consequence to whether nonattorney agents may represent others in courts of law. (*National Bank v. First Wisconsin National Bank* (1977), 53 Ill. App. 3d 482, 488-89, 368 N.E.2d 119.) The trial court's volunteered knowledge of the difficulty for people in Chicago to obtain legal representation was a similarly inadequate basis for it to ignore plaintiff's failure to appear or seek a continuance or to, in fact, obtain legal counsel. Lastly, the misinformation provided plaintiff by the circuit court clerk's office, that she could be represented at the hearing by a friend or relative, was a likewise insufficient basis for the trial court to ignore the law. At most, that misinformation would have militated in favor of a continuance rather than a default judgment or dismissal.

The trial court's allowance of Miller's appearance on plaintiff's be-

half requires a reversal of its ruling. However, in view of the fact that we are remanding this cause to the trial court to afford plaintiff an opportunity to appear *pro se* or to retain counsel to appear for her, we will also address defendant's second proffered ground for a reversal.

Defendant also contends the trial court erred in denying its request to remand the case for a new administrative hearing on the issue of plaintiff's work search under section 3–111(a)(7) of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3–111). Implicit in this contention is the further contention that the trial court erred in reversing defendant's decision, rather than remanding the case, where its comments in so doing went largely to the undisputed fact that plaintiff's voluntarily leaving her employment did not disqualify her under section 601 of the Unemployment Act from receiving benefits.

■■ The power of a trial court to remand a case to an administrative agency under the Administrative Review Law is discretionary. (*Sanderson v. De Kalb County Zoning Board of Appeals* (1974), 24 Ill. App. 3d 107, 111, 320 N.E.2d 54.) As such, it will not be disturbed unless the court has abused its discretion in that regard. *Sanderson*, 24 Ill. App. 3d at 112.

In stating its reasons for reversing defendant's decision rather than remanding the case, the trial court focused almost exclusively on the sufficiency of the evidence with respect to the section 601 issue, *i.e.*, whether plaintiff had left work voluntarily without good cause attributable to Durable and was therefore ineligible for benefits. However, after defendant pointed out the specific basis of its request, *i.e.*, that the referee had inadequately questioned plaintiff regarding her work search, the trial court stated:

"That's what they pay referees for. A person shouldn't be penalized because some referee—had the duty to remand it to the referee before they made the decision if they thought it was inadequate. It seems like it's just a method of further prolonging."

The trial court then continued to review the record aloud. When it reached the list in the claimant questionnaire of the efforts and contacts plaintiff had made to obtain employment between February 8 and 21, 1987, the court stated:

"You can't go around knocking on doors and asking people to give you a job. You have to fill out resumes. You can call on the phone and ask if there's [*sic*] jobs advertised or available, if you send in your resumes, and I think that based on this record *** that [plaintiff] can do other photographic artwork."

The court then referred briefly to the same list of contacts in defendant's claim certification form and said:

"I think just to proceed and have a telephone interview, I think they said the record was adequate. I say the record is adequate, and I'm reversing [defendant's] decision *** based upon their finding."

■ In focusing upon the section 601 issue, the trial court misapprehended the gist of defendant's request to remand. Moreover, the trial court's belief that a remand would penalize the plaintiff was irrelevant to whether the case should have been remanded for the taking of additional evidence. However, we find no abuse of discretion in its denial of that request. Defendant cites no authority for its implication that its belated admission that the record was inadequate required the trial court to remand. To the contrary, we believe the trial court was free to reach its own determination in that regard in the exercise of its discretion.

■ This conclusion, however, does not compel an affirmance of the trial court's ruling apart from its error in allowing a nonlawyer to represent plaintiff. Defendant's denial of benefits to plaintiff was based solely on the conclusion that she did not meet the eligibility requirements of section 500C. As such, the trial court could reverse defendant's decision only after finding that determination contrary to the manifest weight of the evidence. (See *Ferretti v. Department of Labor* (1987), 115 Ill. 2d 347, 506 N.E.2d 560.) However, it is not clear from the record that the trial court applied this standard, either explicitly or implicitly, in reviewing the determinations of the claims adjudicator and referee on the section 500C issues. Instead, it appears that the trial court reversed defendant's decision merely on the basis of its disagreement with a nonexistent section 601 finding by defendant, *i.e.*, that plaintiff had not quit her job with good cause attributable to Durable. For this reason also, we must reverse the trial court's ruling and remand the case for a new hearing.

For all of the foregoing reasons, the order of the circuit court reversing defendant's denial of unemployment benefits to plaintiff is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WHITE and CERDA, JJ., concur.