# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Downs v. Rosenthal*, 2013 IL App (1st) 121406

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL A. DOWNS, Plaintiff-Appellant, v. LESLIE ROSENTHAL; J. ROBERT COLLINS; DREADNOUGHT PARTNERS, L.L.C.; and KNOT, L.L.C., Defendants-Appellees (Rosenthal Collins Group, L.L.C., Defendant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-1406 |
| Filed | September 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's claim to an ownership interest in a limited liability company where the trial court entered an order in favor of plaintiff and against the company and the individual owners of the company, but the order was reversed in the company's appeal, the trial court properly quashed the citations to discover assets plaintiff filed against the individual nonappealing defendants, since it would be contrary to the appellate court's finding in the company's appeal to leave the trial court's initial judgment standing and impose it on the nonappealing defendants and give plaintiff a windfall. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CH-1129; the Hon. LeRoy K. Martin, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Sperling & Slater, P.C., of Chicago (Steven C. Florsheim and Michael G. Dickler, of counsel), for appellant.

Wolin & Rosen, Ltd., of Chicago (Jeffrey Schulman, of counsel), for appellees.

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Michael A. Downs, appeals the circuit court's order barring him from recovering damages from the individual, nonappealing defendants, Leslie Rosenthal (Rosenthal), J. Robert Collins (Collins), Dreadnought Partners, L.L.C. (Dreadnought), and Knot, L.L.C. (Knot), of the underlying order. Plaintiff contends that this court's opinion reversing the circuit court's original order in favor of plaintiff was limited to the appealing defendant, Rosenthal Collins Group, L.L.C. (RCG), and does not extend to the individual, nonappealing defendants. Instead, plaintiff contends that, because the individual, nonappealing defendants chose not to file an appeal of the circuit court's original final judgment, the order is *res judicata* and no court had jurisdiction to overturn the order as to them. Based on the following, we affirm.

¶ 2                                    FACTS

¶ 3 This case appears before us a second time. See *Downs v. Rosenthal Collins Group, L.L.C.*, 2011 IL App (1st) 090970. RCG was a limited liability company (L.L.C.) that hired plaintiff in August of 1997 and terminated plaintiff on January 5, 2004. Collins and Rosenthal were the majority owners of RCG. According to plaintiff, Collins transferred his ownership interest in RCG to Knot in 2003, and Collins owned the controlling interest in Knot. Similarly, Rosenthal transferred his ownership interest in RCG to Dreadnought in 2003, and Rosenthal owned the controlling interest in Dreadnought.

¶ 4 In his third amended complaint, plaintiff asserted five counts all essentially alleging that he had an ownership interest in his former company and was entitled to the resulting profits of the company. Specifically, in count I, plaintiff requested a declaratory judgment that he maintained an ownership interest in RCG and an injunction for an accounting and to "partition his interest from that of defendants Collins, Rosenthal, Knot, and Dreadnought; and/or [require] defendants RCG, Collins, Rosenthal, Knot, and Dreadnought to accord

Downs all rights commensurate with his ownership interest including his share of profits." In count II, plaintiff alleged the individual defendants, as majority owners, breached their fiduciary duty owed to plaintiff. In count III, plaintiff alleged RCG breached his employment agreement by failing to make severance payments. In count IV, plaintiff alleged, in the alternative to counts I and II, that RCG breached his employment agreement regarding his 2.5% equity interest. In count V, plaintiff alleged, in the alternative to counts I and II, that RCG breached an oral contract under which plaintiff was to receive an additional 4% equity interest.

¶ 5 On February 6, 2009, the circuit court found that plaintiff held a 2.5% ownership interest in RCG despite not having paid the requisite "book value" for those shares as provided in his employment contract and ordered that he be paid the resulting profit/loss distributions since his termination from the company in 2004. Specifically, during its oral ruling, the circuit court stated:

"I think Mr. Downs is owed two and a half percent of whatever distributions were made for Rosenthal and Collins from January of 2004 to the present. ***

*** [T]oday's order shall direct the defendants to convey to Mr. Downs, two and a half percent ownership in the company. They are to pay him *** two and a half percent of the distributions that were made between January '04 and today, minus the $125,000 that Mr. Downs owes to them for the acquisition of those shares.

* * *

So I think [plaintiff's] damages are whatever Rosenthal and Collins owes him from distributions that were made between January of 2004 and February 6th, 2009. Those are his damages, and he's owed those shares. So at this point, he owns them. Pursuant to my order, he owns those shares. And your client is directed to execute whatever documents are needed or necessary so that a proof of ownership is evidently shown."

On March 20, 2009, the circuit court entered a written order, finding:

"Plaintiff Michael Downs owns a 2.5% equity ownership *** in defendant RCG (the Rosenthal Collins Group LLC). Downs shall be put in the same position regarding his interest in RCG and distributions there from that he would have held had his 2.5% equity interest in RCG been recognized from January 1, 2004 through the present; *** the defendants are ordered to pay the foregoing amounts, minus $125,000 ***. RCG shall issue the appropriate tax schedule(s) to Downs in conjunction with this payment, providing the same tax treatment to Downs' distributions and allocations as was given to those of Defendants Rosenthal and Collins during the same time period."

RCG and plaintiff both appealed the decision.

¶ 6 While the appeal was pending, plaintiff and RCG entered into an escrow agreement under which RCG deposited $5 million in an escrow account to serve as an appeal bond for the "monetary portion" of the March 20, 2009, order. On May 29, 2009, the circuit court entered an order confirming the escrow agreement and stating that "[d]uring the pendency of the Appeal of this Court's March 20, 2009 Order, neither Downs nor the Defendants shall encumber (outside the ordinary course of business), transfer or otherwise dispose of the 2.5% equity interest in RCG which is the subject of the March 20, 2009 Order and RCG's Appeal

of that order on April 16, 2009." In addition, the court's May 29, 2009, order stayed the enforcement of the March 20, 2009, order pending appeal.

¶ 7     On July 14, 2009, the circuit court granted plaintiff's motion allowing for prejudgment interest on his withheld severance pay, his withheld distributions through 2007, and his profit distributions from January 1, 2008, through March 20, 2009.

¶ 8     On May 21, 2010, plaintiff filed citations to discover the assets of the four nonappealing defendants. In response, defendants filed motions to quash the citations. On June 11, 2010, despite acknowledging the "general principal [*sic*] that if a party fails to take an appeal, once the appeal rights have passed one has a right to collect, pursue collections of the judgment pursuant to citation proceedings," the circuit court entered an order quashing plaintiff's citations to discover the assets of the individual defendants, finding the May 29, 2009, stay order stayed enforcement of the March 20, 2009, order as to the individual defendants. In so ruling, the circuit court relied on the conduct of plaintiff in terms of waiting 14 months after entry of the March 20, 2009, order and 13 months after the appeal rights would have lapsed to seek citation proceedings, and the language of the escrow agreement which provided for the plural form of "defendants" thereby indicating that plaintiff and RCG did not anticipate any form of collection on the March 20, 2009, order until the conclusion of the appellate proceedings.

¶ 9     In response, on June 18, 2010, plaintiff filed a motion to modify the May 29, 2009, stay order, arguing that the stay order should not have applied to the individual defendants because their failure to appeal the March 20, 2009, order caused them to be liable for the declaration of money owed no matter the outcome of RCG's appeal. On July 19, 2010, following a hearing, the circuit court denied plaintiff's motion to modify the stay order, but set the matter for "further proceedings on this motion" for July 29, 2010. In so finding, the circuit court opined that, because the individual defendants "did not take an appeal, that at the end of the day they're going to be responsible for the judgment no matter what happens with RCG." However, according to the language of the escrow agreement, it was the court's belief that any judgment would be satisfied by the escrow account and, therefore, release of those funds was stayed until the conclusion of the appeal. The matter was continued a number of times to allow the parties to determine whether the escrow agreement stayed collection of the March 20, 2009, order as related to the individual defendants.

¶ 10     Then, on August 26, 2010, the parties entered an agreed order, providing:

"1. Defendant Rosenthal Collins Group, L.L.C. has deposited assets into an Escrow Account pursuant to an Escrow Agreement entered into by and among Plaintiff Michael A. Downs, Rosenthal Collins Group, L.L.C. and Fifth Third Bank in May of 2009. The Escrow Agreement, which remains in force, provides security for the appeal of Rosenthal Collins Group, L.L.C. of the monetary portion of the Judgment against Rosenthal Collins Group, L.L.C. in *Downs v. RCG, et al.*, Case No. 04 CH 11729 (the 'Appeal'). Those assets, together with any funds in the Escrow Account, shall also stand as security for all damages owed by Leslie Rosenthal, J. Robert Collins, Dreadnought Partners, L.L.C. and Knot, L.L.C., pursuant to the final judgment against them entered in *Downs v. RCG, et al.*, Case No. 04 CH 11729, by the Circuit Court of Cook County, on March 20, 2009,

including post-judgment interest, and the order dated July 14, 2009 (collectively the 'Judgment').

    2. Rosenthal Collins Group, L.L.C., Leslie Rosenthal, J. Robert Collins, Dreadnought Partners, L.L.C. and Knot, L.L.C. shall have thirty (30) days following the occurrence of one of the events set forth below in paragraph 3 to satisfy the Judgment. If the Judgment, including post-judgment interest, is not paid in full within thirty (30) days after the occurrence of one of those events, absent an order from the Illinois Appellate Court or the Illinois Supreme Court to the contrary, the funds in the Escrow Account shall be used to satisfy the Judgment.

    3. The payment to Michael A. Downs detailed in paragraph 2 shall be made upon the occurrence of any one of the following events: (a) the date of an Order of the Illinois First District Appellate Court including the Appeal in favor of Rosenthal Collins Group, L.L.C.; (b) the last day by which Rosenthal Collins Group, L.L.C. may file a timely petition for leave to appeal to the Illinois Supreme Court of an order of the Illinois First District Appellate Court including the Appeal in favor of Michael A. Downs; (c) the date of an order of the Illinois Supreme Court denying petition for leave to appeal brought by Rosenthal Collins Group, L.L.C. seeking review of the Appeal; or (d) an order of the Illinois Supreme Court concluding its review of the Appeal.

    4. This Court will retain jurisdiction to enforce the Court's orders and to adjudicate any dispute related thereto."

The agreed order was signed by plaintiff's attorney, one of "defendants' attorneys," and the judge.

¶ 11    On December 16, 2011, we reversed the circuit court's decision, instead finding that plaintiff was not a 2.5% owner of RCG. *Downs*, 2011 IL App (1st) 090970, ¶¶ 24-44. Specifically, our opinion provided that "[b]ecause we have found plaintiff was not a 2.5% owner of RCG, we conclude plaintiff was not entitled to 2.5% profit/loss distributions since 2004 and, consequently, was not entitled to prejudgment interest on that award."[1] *Id.* ¶ 44. We subsequently denied plaintiff's petition for rehearing.

¶ 12    On December 23, 2011, RCG filed a motion to cancel and release the appeal bond in the circuit court. In the motion, RCG claimed that "[a]s the Court is also aware, after the posting of the Appeal Bond, an issue arose relating to whether LESLIE ROSENTHAL, ROBERT COLLINS, KNOT PARTNERS, L.L.C., AND DREADNOUGHT PARTNERS, L.L.C. were in addition to RCG responsible for [the declaration of money owed in the circuit court's March 20, 2009, order]. That matter was resolved by the entry of an Agreed Order." Plaintiff filed a response and RCG filed a reply. On January 4, 2012, the circuit court held a hearing on the motion. During the hearing, the circuit court opined that "it was my determination that Mr. Downs was entitled to 2.5 percent interest in Rosenthal Collins, and we all agreed that there were the four nonappealing defendants; but I wondered ***, in light of the appellate court's ruling, how we'd be in a position to enforce that against the nonappealing defendants

---

[1]The Illinois Supreme Court denied plaintiff's request for a supervisory order directing this court to remand the cause for entry of judgment.

when the majority clearly found that Mr. Downs is not entitled to the 2.5 percent." The matter, however, was continued from time to time thereafter.

¶ 13    Then, on February 10, 2012, plaintiff filed a motion for release of the escrow funds. On February 29, 2012, the individual defendants filed a response in opposition to plaintiff's motion and in support of RCG's motion to cancel and release the appeal bond.

¶ 14    On April 12, 2012, this court issued its final mandate.[2] On April 24, 2012, plaintiff filed a motion to stay pending appeal pursuant to Illinois Supreme Court Rule 305(b) (eff. July 1, 2004). On April 25, 2012, the circuit court entered an order granting RCG's motion to cancel and release the appeal bond and denying plaintiff's motion to release the escrow funds. The order, however, stayed the release of the appeal bond/escrow until a scheduled hearing on May 4, 2012. During the hearing on that date, the circuit court stated:

"Clearly, my determination was that Mr. Downs was to pay $125,000 for an interest in RCG. The Appellate Court's determination that Mr. Downs did not own or was not entitled to an interest in RCG, I think, really settled the issue. *Because it wasn't the individuals who owed Mr. Downs the interest in RCG.* RCG owed itself, owed a percentage of itself. And the Appellate Court has determined that, no, it didn't. It found that that determination on my part was error, was against the manifest weight. And I don't think now that a determination by me–I know that the plaintiff had argued earlier that they would have been entitled to collect a judgment against the individuals. And I don't know that that's necessarily true. I think that's a position and an argument, but the judgment itself, for example, that I entered back in March of '09, at paragraph 2, for example, says the defendants are ordered to execute all documents necessary to evidence Downs' 2 and-a-half percent ownership interest in RCG.

Well, clearly, for me to order the individual defendants to execute documents to evidence Mr. Downs' ownership interest in RCG after the Appellate Court has determined that Mr. Downs doesn't own a 2-and-a-half [percent] interest in RCG is to go against the mandate of the Appellate Court.

\* \* \*

*So there's simply nothing there to be enforced against these individual defendants.* And, quite frankly, looking at the judgment order, that judgment order, again, really in my opinion, it really gears itself towards forcing the individual defendants to execute documents and to do whatever is necessary in order to assure that Mr. Downs got his 2-and-a-half percent interest in Rosenthal Collins, into RCG.

\* \* \*

*The declaratory portion of the judgment was that Mr. Downs was owed a 2-and-a-half percent interest in the company. The Appellate Court reversed that. And so the 2-and-a-half percent that he was owed was against RCG. It wasn't against the individual defendants.* That he's owed the 2-and-a-half percent, he was owed 2-and-a-half percent of RCG. And the Appellate Court determined, no, he wasn't. So that's the end of the

_____

[2]This court's original mandate issued on March 30, 2012, was recalled.

declaratory portion." (Emphases added.)

¶ 15     On May 3, 2012, plaintiff filed citations to discover defendants' assets, seeking approximately $1.5 million against each defendant, which represented the lost profits connected to the 2.5% declaration of money owed. Defendants filed a motion to quash the citations in response. On May 4, 2012, the circuit court granted defendants' motion to quash the citations to discover assets, denied plaintiff's Rule 305(b) motion to stay pending appeal, and granted RCG's motion to cancel and release the appeal bond. However, the circuit court stayed the release of the appeal bond based on plaintiff's oral motion seeking a stay of the order.

¶ 16     Then, on May 18, 2012, plaintiff filed a notice of appeal of the circuit court's April 25, 2012, and May 4, 2012, orders. Specifically, plaintiff sought reversal of:

> "the trial court's determination in its order on April 25, 2012, that the Defendants who did not appeal the final judgment entered against them are to be given the benefit of the successful appeal by co-Defendant Rosenthal Collins Group, L.L.C., such that the trial court would not enforce the previously-entered agreed order providing that Appellant could collect his final judgment against the non-appealing Defendants if the appealing Defendant prevailed on appeal. Appellant also seeks the reversal of the trial court's decision in its order of May 4, 2012, to quash Appellant's Citations to Discover Assets whereby Appellant sought to collect his final judgment against the non-appealing Defendants."

We turn now to the arguments presented by the parties.

¶ 17                                    DECISION

¶ 18     The ultimate issue in this case is whether the circuit court's March 20, 2009, order should be enforced against the individual defendants, thereby requiring the individual defendants to pay the 2.5% profit/loss distributions of RCG to plaintiff despite the fact that this court overturned the circuit court's prior order, finding that plaintiff *was not* an owner and *not* entitled to the requested distributions. Plaintiff contends the circuit court's March 20, 2009, order finding in his favor was a final judgment as to the individual defendants, which the individual defendants did not appeal, thereby making the order *res judicata*. As a result, plaintiff contends the circuit court erred in refusing to permit him to collect the money he is owed from the individual defendants by quashing his citations to discover the assets of the individual defendants and by denying the release of the escrow funds to him.

¶ 19     Whether the circuit court properly quashed plaintiff's citations to discover assets is a question of law, which we review *de novo*. *Thorson v. La Salle National Bank*, 303 Ill. App. 3d 711, 714 (1999). Similarly, whether the circuit court erred in refusing to release the escrow funds to plaintiff was based on a question of law, which we review *de novo*. See, *e.g.*, *id.*

¶ 20     We recognize the general legal premise that a nonappealing defendant may not benefit from the efforts of an appealing defendant. *Otta v. Otta*, 58 Ill. App. 2d 63, 72 (1965) (citing *Griffin v. Griffin*, 29 Ill. 2d 354, 362 (1963)); see *Nickel Plate Cloverleaf Federal Credit Union v. White*, 120 Ill. App. 2d 91, 94 (1970). "[W]hen a judgment or decree against two

or more defendants is vacated as to one of them, it need not for that reason alone be vacated as to any of the others, and should not be vacated as to any of the others unless it appears that because of an interdependence of the rights of the defendants or because of other special factors it would be prejudicial and inequitable to leave the judgment standing against them." *Chmielewski v. Marich*, 2 Ill. 2d 568, 576 (1954). Therefore, *Chmielewski* does not require enforcement of a judgment against the nonappealing defendants if the circumstances demonstrate that it would be prejudicial and inequitable to impose the judgment where there is an interdependence of the defendants' substantive rights. *Id.*

¶ 21   In the case before us, plaintiff's right to the profits of RCG was completely dependent on his ownership interest in RCG. Specifically, the circuit court found:

> "1. Plaintiff Michael Downs owns a 2.5% equity ownership (two point five percent) in defendant RCG (the Rosenthal Collins Group L.L.C.). Downs shall be put in the same position regarding his interest in RCG and distributions there from that he would have held had his 2.5% equity interest in RCG been recognized from January 1, 2004 through the present;

> 2. Defendants are ordered to execute all documents necessary to evidence Downs' 2.5% ownership interest in RCG;

> 3. Downs is entitled to a 2.5% ownership profit/loss distribution of RCG from January 2004 through the present and on a going forward basis. RCG is to provide Downs with all documents sufficient to show RCG's distributions and profitability from January 1, 2008 to date, and in connection with any and all future distributions;

> 4. From January 1, 2004 through December 31, 2007 Downs is owed $1,181,092.60 as his profit/loss distributions for his 2.5% equity ownership interest. Downs is also owed 2.5% of RCG's profit/loss distributions from January 2008 to date.

> 5. The defendants are ordered to pay the foregoing amounts, minus $125,000 (one hundred and twenty five thousand dollars). RCG shall issue the appropriate tax schedule(s) to Downs in conjunction with this payment, providing the same tax treatment to Downs' distributions and allocations as was given to those of Defendants Rosenthal and Collins during the same time period;

> 6. The $125,000 represents Downs' payment for his 2.5% equity interest in RCG. The court finds that the book value of ownership interest of Les Rosenthal and Robert Collins in 1997 was $5 million; and

> 7. The court holds that Mr. Downs does not have an additional 4% equity ownership interest in RCG because Mr. Downs and Mr. Rosenthal had different understandings of their agreement and did not have a meeting of the minds.

> This decision is a final and appealable order and there is no just reason for delay."

Although not expressly stated in the March 20, 2009, order, we assume from the context of the circuit court's ruling and the subsequent hearings that the court's ruling was entered on count I of plaintiff's third amended complaint, namely, the declaration of rights and declaration of resulting profits. Per the March 20, 2009, order, the individual defendants were required to effectuate plaintiff's interest by executing the requisite paperwork. However,

plaintiff's ownership interest and rights to profits were invalidated by this court in the initial appeal when we found that plaintiff was not an owner of RCG and, therefore, was not entitled to any profits therefrom. *Downs*, 2011 IL App (1st ) 090970, ¶ 44.

¶ 22    Notwithstanding, plaintiff argues that, because the circuit court's March 20, 2009, order stated "the *defendants* are ordered to pay the foregoing amounts, minus $125,000," the court intended to enter a money judgment against the individual defendants. (Emphasis added.) Contrary to plaintiff's assertion that the circuit court specifically provided "that the nonappealing defendants were liable to Downs for distributions they received," no such language appears in the circuit court's order. After thoroughly reviewing the record, however, the circuit court's March 20, 2009, order is ambiguous. As provided in our fact section of this opinion, the circuit court made contradicting statements on the record regarding whether the individual defendants would be held liable for the declaration of money owed. However, we need not make a determination as to the circuit court's ambiguity where our interpretation of the circuit court's order is not dispositive to this case.

¶ 23    Rather, even assuming, *arguendo*, there was a money judgment entered against the individual defendants, it would be directly contrary to our finding in the initial appeal to impose that judgment upon the individual defendants and, thus, prejudicial and inequitable to leave the March 20, 2009, order standing. See *Chmielewski*, 2 Ill. 2d at 576; *Meldoc Properties v. Prezell*, 158 Ill. App. 3d 212, 217 (1987) (judgment vacated as to the appealing defendant and the nonappealing defendant where the appellate court concluded it would be inequitable to impose an agreed order against the nonappealing defendant when the order was entered with the understanding that both defendants would be bound thereby). Where the declaration of money owed pursuant to the March 20, 2009, order was a direct extension and interdependent upon the declaration of ownership rights, which we invalidated, it would be prejudicial and inequitable to impose the March 20, 2009, order against the individual defendants when their only clear responsibility, based on the language of the order, was to effectuate plaintiff's interest in RCG. Plainly stated, in the initial appeal, we found that plaintiff owns nothing and was not entitled to any distributions; therefore, to enforce the circuit court's March 20, 2009, order against the individual defendants would produce a windfall for plaintiff. *Downs*, 2011 IL App (1st ) 090970, ¶ 44.

¶ 24    Plaintiff is seeking to enforce a money judgment on individual defendants, members of an L.L.C., based on purported obligations of RCG, the L.L.C. Due to the corporate structure of RCG, namely, as an L.L.C., the individual defendants could not be personally liable for the obligations of RCG. 805 ILCS 180/10-10(a) (West 2010) ("Except as otherwise provided *** , the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager."). Therefore, it would be prejudicial and inequitable to impose the money judgment on the individual defendants due to the interdependence of rights between RCG and the individual defendants as members of RCG similar to the result in *National Bank of Austin v. First Wisconsin National Bank of Milwaukee*, 53 Ill. App. 3d 482 (1977). In *National Bank of Austin*, a mortgage foreclosure proceeding, the appellate court found it would be prejudicial and inequitable to impose a

deficiency judgment against a partnership due to the interdependence of the rights of the individual partners for whom the judgment had been vacated. *Id.* at 492. In other words, the *National Bank of Austin* court found it would be improper to allow the obligation of the partnership to stand as to the money deficiency judgment where it would cause the individual partners to be liable despite having been deemed not liable. *Id.* Therefore, the *National Bank of Austin* court, to achieve an "equitable result," vacated the deficiency judgment as to all parties. *Id.* In this case, because we have found there was no obligation of RCG as an L.L.C. to plaintiff, it would be inequitable and prejudicial to impose any obligation on the individual defendants in their capacity as members of the L.L.C. In sum, based on the circumstances, we conclude that the circuit court's March 20, 2009, order is not enforceable against the individual defendants.

¶ 25 Further, we find the doctrine of *res judicata* does not apply to the instant case. " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any *subsequent actions* between the same parties or their privies on the same cause of action.' " (Emphasis added.) *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996)). The three requirements for the application of *res judicata* are: (1) a final judgment on the merits having been rendered by a court of competent jurisdiction; (2) an identity of *causes* of action; and (3) identical parties or privies in *both actions*. *Id.* The doctrine of *res judicata* bars not only what was decided in the *first action*, but also whatever could have been decided. *Id.*

¶ 26 Again, even assuming, *arguendo*, that there was a judgment entered against the individual defendants, the key fact preventing the application of the doctrine of *res judicata* to the instant matter is the lack of a subsequent cause of action. Pursuant to section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2010)), "[a] judgment creditor *** is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting supplementary proceedings shall be prescribed by the rules." 735 ILCS 5/2-1402(a) (West 2010). Accordingly, when plaintiff initiated citation proceedings against the individual defendants while the underlying appeal was being considered by this court, those proceedings were supplementary to the circuit court's March 20, 2009, order. In fact, the circuit court quashed the citations on June 11, 2010, and May 4, 2012, because the citation proceedings were stayed until resolution of this court's appeal in the initial instance and our findings invalidated the circuit court's judgment in the second instance.

¶ 27 Plaintiff argues, within a footnote absent citation to relevant authority in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Sept. 1, 2006), that a citation proceeding is a "collateral attack" barred by *res judicata*. The legislature, however, expressly stated that a citation proceeding is a "supplementary proceeding" without defining the term. 735 ILCS 5/2-1402(a) (West 2010). According to Black's Law Dictionary, a collateral proceeding is "[a] proceeding brought to address an issue incidental to the principal proceeding" while a

supplementary proceeding is "1. A proceeding held in connection with the enforcement of a judgment, for the purpose of identifying and locating the debtor's assets available to satisfy the judgment. 2. A proceeding that in some way supplements another." Black's Law Dictionary 1324 (9th ed. 2009). As defined, a citation proceeding is *not* the equivalent of a collateral proceeding. Rather, " '[s]upplementary proceedings to collect, of whatever nature, must derive their support from the main judgment, and if the main judgment fails the right to collect in such proceedings must also fail.' " *People ex rel. Scott v. Police Hall of Fame, Inc.*, 69 Ill. App. 3d 501, 503 (1979) (quoting *Alsen v. Stoner*, 114 Ill. App. 3d 216, 224-25 (1969)). Here, the citations to discover the individual defendants' assets necessarily failed because we invalidated the underlying order. We, therefore, conclude that the circuit court did not err in quashing plaintiff's citation proceedings aimed at fulfilling the court's March 20, 2009, order against defendants based on the doctrine of *res judicata*.

¶ 28                                              CONCLUSION

¶ 29        We affirm the judgment of the circuit court in finding that the individual defendants were not responsible for providing distributions to plaintiff in conjunction with the March 20, 2009, order where our December 16, 2011, opinion invalidated plaintiff's ability to collect any profits.

¶ 30        Affirmed.